WILLIAM KORN, ALEXANDER H. ARNSTEIN AND ETHEL LEWIS KORN, AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF RALPH H. KORN, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78954. Promulgated April 30, 1937.

*George H. Craven, Esq.*, and *Edwin A. Cooney, Esq.*, for the petitioners.

*R. P. Hertzog, Esq.*, for the respondent.

OPINION.

HARRON: The stipulated facts show, and respondent concedes, that the decedent's transfer of his vested remainder interest in the estate of his father was not made in contemplation of death.

The issues here are (1) whether the value of the vested remainder interest transferred in trust during decedent's lifetime should be included in his gross estate; (2) whether the value of the remainder interest is $361,938.85 as determined by the Commissioner under table A of article 13 of Regulations 80, or is some other amount.

*Issue (1).* Section 302 of the Revenue Act of 1926 provides for determination of the value of a gross estate for purposes of estate taxation and the provisions relied upon in this proceeding are set forth in the margin so far as pertinent.[1] It is petitioners' contention that the assignment of his remainder interest to trustees under the instrument of January 10, 1927, completely divested decedent

---

[1] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

    \*      \*      \*      \*      \*      \*      \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*

of all of his interest in the property constituting the remainder interest and that decedent retained no interest subject to estate tax under section 302 (c) of the Revenue Act of 1926 or under the amendments to that section of March 3, 1931 (section 803 of the Revenue Act of 1932) or under section 302 (d) of the Revenue Act of 1926.

The interest of decedent in the property rights involved in the trust instrument which he executed January 10, 1927, is to be determined by the laws of the State of New York, where his estate is administered. *Commissioner* v. *Jones*, 62 Fed. (2d) 496. The trust instrument under consideration was irrevocable. It is governed by the laws of the State of New York. The corpus of this trust was the remainder interest of Ralph Korn in his father's estate which was not then and is not now in possession of the trust. The trust created a life estate in the grantor, Ralph Korn, in the corpus of the trust. It gave to the trustees power to distribute the corpus upon termination of the trust. The trust instrument named four persons, then living, to whom the corpus should be distributed eventually, if there should be no living issue of the grantor, Ralph Korn, or if, in the alternative, he should fail to exercise a reserved power of appointment to such of the issue of his father, David Korn, in such shares as he should designate by his last will. The four named distributees are now living. Under the trust they received a future interest in the corpus of the trust. The laws of the State of New York favor the vesting of future interests. Section 40 of the Real Property Law (Laws of 1909, ch. 52) McKinney's Consolidated Laws of New York, Annotated, book 49, provides as follows:

*When future estates are vested; when contingent.* A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain.

The test of vesting applied by New York courts has been stated as follows:

If you can point to a man, woman or child who, if the life estate should now cease, would, *eo instanti et ipso facto*, have an immediate right of possession, then the remainder is vested.

Section 41 of the Real Property Law (McKinney's Consolidated Laws of New York, Annotated, book 49) provides as follows:

The existence of an unexecuted power of appointment does not prevent the vesting of a future estate, limited in default of the execution of the power.

This provision has been interpreted by New York courts to mean the following:

Under the law of the State of New York estates in remainder which are limited to take effect upon default in the exercise of a power of appointment

are not prevented from vesting by the existence of the power, but take effect in the same manner as if no power existed, subject, however, to be divested by an exercise of the power.

(Sec. 41, Real Property Law, *supra*, and cases cited thereunder, particularly *Matter of Haggerty* (1908), 128 App. Div. 479; 112 N. Y. S. 1017; affd. (1909), 194 N. Y. 550; 87 N. E. 1120; *In re Leonard's Will*, 143 Misc. 172; 256 N. Y. S. 355; *In re Bower's Estate*, 186 N. Y. S. 912; *In re Haight's Estate*, 136 N. Y. S. 557, affirming 136 N. Y. S. 952; *Schoellkopf* v. *Marine Trust Co.*, 267 N. Y. 358, all referred to on the question of contingently vested future interests.) See also *Elizabeth B. Wallace, Executrix*, 27 B. T. A. 902, for review of the law of New York relating to when future estates are vested and when contingent.

It is in our opinion clear that the four named nieces and nephews of Ralph Korn received under the trust he created a vested future estate in the corpus of the trust subject to a condition subsequent which never occurred because the decedent did not exercise his power of appointment. However, up to the time of his death, decedent had the power to divest the interest of his nieces and nephews or to alter their shares, if we regard them as "the issue of the said David Korn" in the broader sense of the term issue, as petitioner contends they are. Direct issue of David Korn were living at the time of the execution of the trust, namely, his sons, Daniel and William, and they survived decedent. Ralph Korn, therefore, could have divested the interest of his nieces and nephews completely under his reserved power of appointment by will. He retained a power of revocation with respect to their interest. The decedent retained substantial control, though limited, over the trust corpus until his death. His death terminated that control, ended the possibility of any change by him and was the generating source of transmission of the property involved to the survivors. The reservation of such power to change the possession of the interest brings the case within *Porter* v. *Commissioner*, 288 U. S. 436.

We must hold, therefore, that the remainder interest of Ralph Korn in his father's estate was an interest which must be included in his taxable gross estate under the provisions of section 302 (d) of the Revenue Act of 1926, for the enjoyment of this interest transferred to the trust "was subject at the date of his death to * * * change through the exercise of a power." Holding as we do, it is not necessary to consider whether section 302 (c) as amended would be applicable in determining this issue.

In support of our determination of this issue the decision of the Circuit Court of Appeals in *Commissioner* v. *Chase National Bank of New York*, 82 Fed. (2d) 157; certiorari denied, 299 U. S. 553, is referred to. The facts in that case are so similar to those

before us here as to make that proceeding indistinguishable from this one. The same issue arose in the jurisdiction of the State of New York and was decided adversely to the petitioners there. This Board has previously followed the decision referred to in *Stewart W. Bowers, Trustee*, 34 B. T. A. 597, and previous to that decision arrived at the same conclusion in *W. H. Holderness, Administrator*, 33 B. T. A. 155; affd., *Holderness v. Commissioner*, 86 Fed. (2d) 137. Where the grantor reserves the power to alter, amend, or revoke a trust it has been consistently held that the reservation of the power requires the taxation of the trust as part of the grantor's gross estate. *Cook v. Commissioner*, 66 Fed. (2d) 995, affirming 23 B. T. A. 335; *Dort v. Commissioner*, 69 Fed. (2d) 836; *Hoblitzelle v. United States*, 3 Fed. Supp. 331, *Frederick Foster et al., Executors*, 31 B. T. A. 769; *Edward Jackson Holmes et al., Executors*, 30 B. T. A. 97; *Mead v. Welch*, 13 Fed. Supp. 981; *Margaret Day et al., Executors*, 34 B. T. A. 11; *Boston Safe Deposit & Trust Co. et al., Executors*, 34 B. T. A. 911. Cf. *Tait v. Safe Deposit & Trust Co. of Baltimore*, 74 Fed. (2d) 851, where it was held that no power to alter or amend the trust ever came into existence.

*Issue (2).* The primary question involved in this issue is, What was the value at the date of decedent's death of his remainder interest in his father's estate which was subject to the life estate of another person? Section 302 of the Revenue Act of 1926 states that, "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." The statute does not define the term "value", nor has Congress seen fit to enlarge upon the meaning of this term in the statute. The Commissioner has adopted the regulations prescribing the method of valuing various types of property for purposes of determining estate taxes and these regulations in substantially the same form have been followed for many years. Article 13 of Regulations 80 is set forth in the margin in so far as it is pertinent to this issue.[2] The

---

[2] ART. 13. (1) *General.*—The value of all property includable in the gross estate is the fair market value thereof at the time of decedent's death. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. The fair market value of a particular kind of property includable in the gross estate is not to be determined by a forced sale price * * *.

* * * * * * *

(10) * * * If the decedent had a remainder interest in property subject to the life estate of another, and such interest constituted an asset of his estate, the present worth of the remainder interest at the time of death should be obtained by multiplying the value of the property at the time of death by the figure in column 3 of Table A opposite the number of years nearest to the age of the life tenant. If the remainder interest is subject to an estate for a term of years Table B should be used.

Example: The decedent was entitled to receive property worth $50,000 upon the death of his elder brother, to whom the income for life had been bequeathed. The brother at the time of the decedent's death was 31 years old. By reference to the table it is found that the figure in column 3 opposite 31 years, is 0.31262. The present worth of the remainder interest is, therefore, $15,631. * * *

respondent has determined the value of the remainder interest, under section 302 of the statute referred to above, to be $361,938.85 by application of the method for valuing remainder interest set forth in article 13 (10). The petitioners contest both the valuation determined by the respondent and the method which he has used in arriving at this determination.

Since the method used by respondent in determining valuation is under attack, it is pointed out that estate taxes "rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being, and that it is the power to transmit, or the transmission, from the dead to the living, on which such taxes are more immediately rested." See *Knowlton* v. *Moore*, 178 U. S. 41. Also, in principle, an inheritance and legacy tax "is not upon property in the ordinary sense of the term, but upon the right to dispose of it"; "the tax is not a tax upon the property itself, but upon its transmission by will or descent"; *Knowlton* v. *Moore*, *supra*. Thus Congress has the power to prescribe any reasonable standard or measure for the taxation of the exercise of this right, and under the present statute it has prescribed the value of the property passing to be the measure of the tax. In general, the Commissioner of Internal Revenue has, by Regulations 80, article 13, interpreted the term "value" in section 302 of the Revenue Act of 1926 to be "fair market value." Article 13 (1) generally states: "The value of *all* property includable in the gross estate is the fair market value thereof at the time of decedent's death." See *Cecil H. Gamble, Executor*, 33 B. T. A. 94, 99. It is our understanding that article 13 (10), providing a method for valuing remainder interests, is intended to carry out this general interpretation of the term "value" and endeavors to arrive at the "fair market value" of the remainder interest by computing the present worth of the corpus which is valued at its fair market value on the date of decedent's death.

The property subject to the remainder interest involved consists chiefly of bonds of states, cities, railroads, and public service corporations. The parties have stipulated that the value of this property at the date of decedent's death was $456,682.12. It is our understanding that this stipulated value is the fair market value of the corpus of the remainder interest. The method used by respondent in determining the present value of this remainder interest subject to a life estate may be described in the following way:

Since the remainder interest is subject to the life estate of another person and will not come into possession and enjoyment until the termination of that life estate the respondent has valued the remainder interest under the method provided by his regulations for computing the present worth of a sum, the possession of which is

deferred for a given period. The respondent's regulations adopt the combined experience table of mortality for determining the life expectancy of the life tenant which is the period during which the remainderman's possession will be deferred. The value of the corpus is then discounted at a rate of 4 percent compounded annually over that period in order to ascertain the present worth. It is recognized by the Commissioner, frequently, that the rate of 4 percent compounded may not always be a proper rate and the factor is adjusted to adopt another rate of interest if the facts show justification. See *Security-First National Bank of Los Angeles, Executor*, 35 B. T. A. 815. But here there is nothing to indicate that the method prescribed by article 13 (10) is unreasonable. See *Simpson* v. *United States*, 252 U. S. 547.

The petitioners contend that the method followed by the respondent in valuing the remainder interest should not be applied in this proceeding. They contend that this remainder interest has a "fair market value" which is a price which it would bring on a market for remainder and reversionary interest which can be found in New York, Boston, Philadelphia, or Chicago. The testimony of the petitioners' expert witness is that the best price which this remainder interest would have brought at the date of decedent's death was $162,000. This price is alleged to be "the fair market value of the remainder interest." From a review of the evidence we are convinced that this price is not the fair market value of the remainder interest. It is clear, throughout the testimony of petitioners' expert witness, that this price is based upon the experience which the expert witness has had in disposing of remainder interests in a limited market and also that his experience in almost every instance is that sales of remainder interests at such prices are made by remaindermen compelled to liquidate their interests under the pressure of extreme need for money. It is also evident that, in the experience of petitioners' expert witness, the buyers of remainder interests with whom he has negotiated, have been willing to pay a price fixed at no more than one-third of the value of the property in remainder interests comparable to that here involved, because they regard such purchases as speculative investments. On redirect examination the expert witness was asked:

Q. From your experience, do you consider it possible for the owner of a reversionary interest to obtain anything like a fair price as compared with what the property will yield him if he waits until its maturity?

A. I have never known it to be so.

On cross-examination, the witness was asked the following questions:

Q. If you had been the owner of a reversionary interest of this kind would you have sold it for one-third?

A. I don't approve of these transactions.

Q. I did not ask whether you approved.

A. I would not have done it.

Q. You would not have accepted one-third?

A. It depended on the necessity, if I needed the money.

Q. Unless you were forced to sell?

A. I would have sold half of the fractional interest; I would not have sold the whole thing.

Q. You would not have sold for one-third unless you needed the money or were forced to sell?

A. No, sir.

The petitioners' expert witness testified specifically as to one recent sale of a remainder interest which he had handled. In this negotiation he persuaded the remaindermen to sell only a part of their remainder interest because of the extremely low price which he could get in a limited market. From his testimony it is apparent that this expert witness himself does not believe that the prices which can be obtained in the limited market for remaindermen's reversionary interests are fair prices and it is apparently his practice to advise remaindermen to sell only parts of their remainder interests, rather than sacrifice the whole for such low prices as compared to the values involved. We must conclude, therefore, that petitioner has not offered any evidence of the "fair market value" of the remainder interest involved and that the value of $162,000 is not a fair market value within the meaning of article 13 (1) of Regulations 80, which specifically provides that:

The fair market value is the price at which the property would change hands between a willing buyer and a willing seller neither being under any compulsion to buy or sell. The fair market value of a particular kind of property includable in the gross estate is not to be determined by a forced sale price * * *.

This is the definition of fair market value laid down in many decisions of this Board and the courts. *French Dry Cleaning Co.,* v. *Commissioner,* 72 Fed. (2d) 167; *Robertson* v. *Routzahn,* 75 Fed. (2d) 537; *James Couzens,* 11 B. T. A. 1040; *Brooks* v. *Wilcutts,* 78 Fed. (2d) 270; *Premier Packing Co.,* 12 B. T. A. 637, 642; *Elmhurst Cemetery Co.* v. *Commissioner,* 300 U. S. 37.

No other evidence has been introduced to overcome the correctness of the Commissioner's determination. There is no direct attack on the propriety of the respondent's use of a 4 percent compound discount factor in arriving at the present value of the remainder interest. The petitioners' attack on the combined experience table of mortality used by the Commissioner was chiefly directed to the point that any mortality table furnishes only an estimate and not a certainty on life expectancy and that speculative buyers would discount that estimate in their own favor. In so far as the peti-

tioners' attack was directed at the particular mortality table used it must be dismissed in the absence of any attempt to prove the superior accuracy and validity of any other mortality table. This comment is made without passing on the merits of the regulation followed for so many years, but we take notice of the statement of the Supreme Court in *Simpson* v. *United States, supra:*

The objection is not to the particular table that was used but to the use of any such table at all—to the method. Such tables, indeed the precise table which was made the basis of the one used by the collector, has been resorted to for many years prior to 1889 by courts, Legislatures, and insurance companies for the purpose of determining the present value of future contingent interests in property * * *. Both the method and the rate adopted in this case have been assumed by this court, without discussion, as proper in computing the amount of taxes to be collected under this War Revenue Act in *Knowlton* v. *Moore,* 178 U. S. 41, 44, 20 Sup. Ct. 747; *United States* v. *Fidelity Trust Co.,* 222 U. S. 158; *Rand et al.* v. *United States,* 249 U. S. 503; *Henry, Executor* v. *United States,* 251 U. S. 393. It is much too late to successfully assail a method so generally applied. * * *

In this proceeding petitioners have failed to introduce evidence upon which we can sustain their attack upon the method used and there is no evidence to show that the valuation of $361,938.85 arrived at by the respondent by use of the method is not a fair value within the meaning of section 302 of the Revenue Act of 1926.

The respondent is therefore sustained in the valuation of the remainder interest which he has determined to be proper for the purposes of estate tax in this proceeding.

The respondent has not allowed credits for the amount of any estate tax paid to a state pursuant to section 301 (b) of the Revenue Act of 1926. Upon proof of such payment and the amount thereof to the Commissioner, such credit is allowable.

Reviewed by the Board.

*Decision will be entered under Rule 50.*