Taet, J.,
dissenting. As the majority opinion expressly recognizes, the question to be determined by the Probate Court in the instant case was “the actual market value of the succession [i. e., the 8100 shares of Towmotor Corporation] as of * * * the date of death” of the decedent on November 28, 1957. That question was obviously á question of fact. Since this court does not weigh evidence, it should affirm the determination of that question of fact made by the Probate Court and affirmed by the Court of Appeals if there is substantial evidence in the record to sustain such determination, i. e., if it is a determination that reasonable minds could reach from the evidence presented to the Probate Court.
However, this court is apparently holding that, notwithstanding any other evidence tending to show a lesser value, the value of these 8100 shares must be determined by multiplying by 8100 the market price per share indicated by the mean between the bid and ask prices for such shares on that date on the so-called over-the-counter market (apparently $19.75).
The unsoundness of such a conclusion (which is also ap *451 parently irreconcilable with either the majority or minority opinions or the judgment in Roessler v. Security Savings & Loan Co. [1947], 147 Ohio St., 480, 72 N. E. [2d], 259) is apparent from a consideration of the record. For example, the evidence affirmatively discloses without dispute that the total sales of Towmotor shares were not in excess of 3819 in October 1957, 6649 in November 1957, 6000 in December 1957 and 7500 in January 1958. Only by completely ignoring the unyielding law of supply and demand can anyone even pretend that prices on the so-called over-the-counter market, where sales averaged only 300 to less than 400 shares a trading day, could conclusively establish a market value for 8100 shares.
As is often the case, the use of labels such as “blockage rule” or “blockage principle” tends to confuse what should be a relatively simple problem.
As a general rule, where shares of stock are listed and are bought and sold upon a stock exchange[1] constantly in large quantities for cash at prices which are recorded, the prices so recorded for such shares on a particular day may be conclusive in determining the value of a block of such shares on that day. McCormick on Damages (Hornbook series, 1935), 166, Section 44. See Citizens Fidelity Bank & Trust Co. v. Reeves, Commr. (Ky., 1953), 259 S. W. (2d), 432. But see Clabby’s Estate (1932), 308 Pa., 287, 162 A., 207, 83 A. L. R., 936, State v. Wagner (1951), 233 Minn., 241, 46 N. W. (2d), 676, 23 A. L. R. (2d), 762, Walker v. People (1901), 192 Ill., 106, 61 N. E., 489, indicating that even in such an instance such recorded prices may not be conclusive.
The so-called “blockage rule” is an exception to that gen *452 eral rule and, to the extent applicable in the instant ease[2], may be described as follows:
Where the evidence establishes that a block of shares to be valued as of a particular day is so large that its sale on and during a reasonable period before and after that day would necessarily and substantially have depressed the price of such shares, then the prices recorded on that exchange for such shares on that day will not be conclusive in determining the value of that block of shares on that day.
As stated in Estate of McKitterick (1940), 42 B. T. A., 130, 137, the basis for this so-called “blockage rule” is “that the actual market is so relatively narrow, as compared with the stock # * * to be valued, as to destroy or seriously affect the weight of the prices in such market as evidence of the” value of the stock to be valued.
This so-called “blockage rule” does not exclude evidence as to prices on the exchange but merely permits the consideration of other competent and relevant evidence on the question of fact as to the market value of the block of stock. In some instances, the other evidence may not be such as to even justify the trier of the facts in finding a value less than that which would be arrived at by multiplying the number of shares in the block by the recorded stock exchange price per share on the valuation date. See Mott v. Commissioner of Internal Revenue (C. C. A. -6, 1943), 139 F. (2d), 317. This so-called “blockage rule” does not authorize a valuation at a forced sale price (see Helvering, Commr., v. Safe Deposit & Trust Co. [C. C. A. -4, 1938], 95 F. [2d], 806, 812) although the majority opinion apparently assumes that it does.
The holding of the majority in the instant case, that the market value of the block of 8100 shares must equal 8100 times the market value for one share or 81 times the market value, for *453 100 shares, results from a failure to recognize that the property being valued is a block of 8100 shares and not 8100 blocks of one share each or even 81 blocks of 100 shares each. This holding is certainly inconsistent with the holdings of this court in Sowers, Supt., v. Schaeffer (1949), 152 Ohio St., 65, 87 N. E. (2d), 257; (1951), 155 Ohio St., 454, 99 N. E. (2d), 313. On both occasions when that case was before this court, we held that the property there condemned should be valued as a whole even though the value of the whole was less than the aggregate of the values of the several interests or estates therein.
See also McCormick on Damages (Hornbook series, 1935), 165, Section 44, where the heading reads in part:
“The market value of property is its value as a whole. Thus a stock of goods is taken at its wholesale value, and a tract of land at its value as a tract, and not the total value of the lots, taken singly.”
Suppose a large city department store purchases 8100 identical bottles of perfume for $8100 and immediately puts these bottles on sale at $3 each and sells an average of 20 bottles a day over a period of about 11 months. Suppose also that, at the end of those 11 months, sales of these bottles have begun to decline and the store then puts the remaining 2100 bottles on sale at $0.80 a bottle and disposes of them within a month. Thus, it would have realized $19,680 gross on its $8100 purchase in about a year. Of course, its net recovery would have been much less because of overhead, advertising and other selling expenses. Certainly, after the first 100 bottles had been sold within the first five days at $3 a bottle, the market value of a single bottle at that time would have been $3. However, no reasonable person would suggest that the market value as a whole at that time of the remaining 8000 bottles would have been 8000 times $3 or $24,000, although a decision such as that being rendered in the instant case would necessarily lead to such a conclusion.
In the instant case, we are not confronted with the question whether the trier of the facts must reject the indicated over-the-counter price for a few shares on the valuation date as the sole criterion for the valuation of these 8100 shares. See Newberry et al., Exrs., v. Walsh, Dir. (1956), 20 N. J., 484, 120 *454 A. (2d), 242, which reversed a decision of the trier of the facts on the ground that he should have rejected stock exchange prices as the sole criterion for valuation of a large block of shares. Some of the cases cited as rejecting the so-called “blockage rule” merely represent holdings that in such a situation the trier of the facts may (not that he must) value the 8100-share block at a figure which is equal to 8100 times such over-the-counter price per share on the date of the decedent’s death. See for example State v. Wagner, supra (283 Minn., 241).
It is significant that the only case cited in the majority opinion in the instant case in support of the conclusion that the trier of the facts must so value the 8100-share block is Florida National Bank of Jacksonville v. Simpson (Fla., 1952), 59 So. (2d), 751, 33 A. L. R. (2d), 581. The opinion in that case, stating the views of a majority of four and a minority of three, refers by name to only one case considering the problem, i. e., Bingham’s Admr. v. Commonwealth (1922), 196 Ky., 318, 244 S. W., 781. That case was expressly overruled by Citizens Fidelity Bank & Trust Co. v. Reeves, Commr. (Ky., 1953), 259 S. W. (2d), 432.
A great number of cases have recognized and approved the so-called “blockage rule,” at least to the extent that we would have to recognize and approve it in order to affirm the finding of the trier of the facts in the instant case: Newberry et al., Exrs., v. Walsh, Dir. (1956), 20 N. J., 484, 120 A. (2d), 242; Clabby’s Estate (1932), 308 Pa., 287, 162 A., 207, 83 A. L. R., 936; Citizens Fidelity Bank & Trust Co. v. Reeves, Commr. (Ky., 1953), 259 S. W. (2d), 432; Mott v. Commissioner of Internal Revenue (C. C. A.-6, 1943), 139 F. (2d), 317; Helvering, Commr., v. Maytag (C. C. A.-8, 1942), 125 F. (2d), 55; Helvering, Commr., v. Safe Deposit & Trust Co. of Baltimore (C. C. A.-4, 1938), 95 F. (2d), 806; Commissioner of Internal Revenue v. Shattuck (C. C. A.-7, 1938), 97 F. (2d), 790; Calvert, Comptroller, v. Kattar, Exrx. (Tex. Civ. App., 1957), 301 S. W. (2d), 318; Annotation (1952), 23 A. L. R. (2d), 775.
Some of those cases involved, as does the instant case, a tax on the value of what is received.
In several of those cases, it was contended, as in the instant case, that, since the shares to be valued were not to be *455 sold, the so-called “blockage rule” should have no application. In rejecting that contention, it is said in the recent case of Newberry v. Walsh (1956), supra (20 N. J., 484, 497):
“It is immaterial, of course, that no sale has taken place. If market value is to be an index of appraisal we necessarily deal in a hypothetical transaction so far as the claimant is concerned.”
Perhaps, the somewhat different view on this question expressed in the opinions in State v. Wagner, supra (233 Minn., 241) (construing “full and true value”), and Florida National Bank v. Simpson, supra (Fla., 59 So. [2d], 751) (construing “full cash value”), is explainable by the fact that neither of the statutes involved in those cases used the term “actual market value” as does our statute.
As pointed out in the majority opinion, the Tax Commissioner offered evidence “that the 8100 shares could have been sold in the over-the-counter market at prices prevailing when offered if sales were made in small quantites and if spread over a six-month period without having the effect of depressing the market by reason of the offering.” This evidence would probably have been very persuasive to the Probate Court as the trier of the facts if it had been buttressed by evidence that “the market” (i. e., the prices on the over-the-counter market) had been at least as high during that six-month period as it had been at the date of the decedent’s death. However, no such evidence was offered. On the contrary, the only evidence in the record, with regard to prices after the decedent’s death, discloses that the over-the-counter price for Towmotor stock declined steadily after the decedent’s death on November 28, 1957, until January 1 when it was 15%. Thus, even without any depressing effect from the sale of these 8100 shares, the sale of any part of the 8100 shares during the month after the decedent’s death would have necessarily been at prices substantially less than the over-the-counter prices on the date of her death and even lower than the value per share fixed by the decision of the Probate Court. This evidence certainly supports the conclusion of the Probate Court that the over-the-counter per share price quotations for 100-to-300 share lots of Tow-motor on the date of the decedent’s death should not conclu *456 sively determine the per share value of a block-of 8100 shares of that stock on that date.

The writer of this opinion has considerable doubt as to whether such general rule should be applied to a situation like that in the instant case where the buying and selling is not on any exchange but only in a so-called over-the-counter market, especially where there is no evidence of prices on sales but'only of bid and ask prices. Perhaps this may explain in part the decision of this court in Roessler v. Security Savings & Loan Co., supra (147 Ohio St., 480). However, for the purposes of this opinion, it will be assumed, as the majority opinion apparently has, that the general rule would be as applicable in such a situation as where sales prices on an exchange are involved.

 It may be noted that, in some instances, as a result of application of the so-called “blockage rule,” a greater value may be placed upon the whole block than would be indicated by merely multiplying the per share market price by the number of shares in the block. See annotation (1952), 23 A. L. R. (2d), 775, 777; Citizens Fidelity Bank & Trust Co. v. Reeves, supra (Ky., 259 S. W. [2d], 432, 434); Helvering, Commr., v. Safe Deposit & Trust Co. (C. C. A. -4, 1938), 95 F. (2d), 806, 810,