SIMPSON, SURVIVING EXECUTOR OF MOORE, *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 213.   Argued March 17, 18, 1920.—Decided April 19, 1920.

In computing succession taxes payable under the War Revenue Act of 1898, upon legacies of the net income for life from funds placed with trustees for investment and reinvestment, it was lawful for the Commissioner of Internal Revenue to assess the legacies by means of general tables based on approved mortuary tables and on four per cent. as the assumed value of money.  P. 550.  30 Stat. 448, §§ 29, 30; Rev. Stats., §§ 321, 3182.

The court takes judicial notice that, at the time when the taxes involved in this case were collected, four per cent. was very generally

assumed to be the fair value or earning power of money safely invested. P. 550.

Where a will directed conversion of residuary estate into money and its payment by the executors to a trustee of their selection, in trust for certain legatees, and where the trustee had been selected and the payments largely made, and there remained funds of the estate, clearly exceeding the requirements of pending claims, the payment of which to the trustee had become a duty of the executors enforceable by the legatees under the state law, *held*, that the interests of the legatees in such funds were vested, within the meaning of the Refunding Act of June 27, 1902, § 3, 32 Stat. 406. New York Code of Civil Procedure, 1899, §§ 2718, 2721 and 2722, considered. P. 551.

Proof that a suit by stockholders to obtain an accounting for promotion profits was pending against a firm of which a testator was a member, without showing the pleadings, the issues or character of the suit, the amount or merit of the claim, or the result of the litigation, *held*, insufficient to establish that legacies in funds in the hands of his executors were not vested, within the meaning of the Refunding Act of June 27, 1902, *supra*. P. 552.

53 Ct. Clms. 640, affirmed.

THE case is stated in the opinion.

*Mr. Thomas M. Day*, with whom *Mr. H. T. Newcomb* was on the brief, for appellant.

*The Solicitor General*, with whom *Mr. A. F. Myers* was on the brief, for the United States.

MR. JUSTICE CLARKE delivered the opinion of the court.

This is a suit to recover the whole, or failing that, a large part of a succession tax assessed under the Spanish War Revenue Act of June 13, 1898, c. 448, 30 Stat. 448, and paid by the appellants as executors of the will of John G. Moore, deceased, a citizen of New York, who died in June, 1899.

The assessment was made against the appellants as persons having in charge or trust, as executors, legacies arising from personal property, and the contention is that right to recovery may be derived, either from the Act of Congress, approved July 27, 1912, c. 256, 37 Stat. 240, directing the Secretary of the Treasury to refund the amount of any claims which should be satisfactorily shown to have been "erroneously or illegally" assessed under warrant of § 29 of the War Revenue Act, or from the Act, approved June 27, 1902, c. 1160, 32 Stat. 406, which directs the Secretary of the Treasury to refund to executors so much of any tax as may have been collected under warrant of that act "on contingent beneficial interests which shall not have become vested prior to" July 1, 1902.

The decedent in his will directed his executors to convert a large residuary estate into money, to divide the same into three equal shares, and to transfer two of such shares to a trustee, to be selected by them, in trust to invest and reinvest and to pay to each of his two daughters the whole of the net income of one share so long as she should live.

Pursuant to authority derived from § 31 of the War Revenue Act and Rev. Stats., §§ 321 and 3182, the Commissioner of Internal Revenue, in order to provide for the determination of the amount of taxes to be assessed on legacies such as are here involved, on December 16, 1898, issued instructions to Collectors of Internal Revenue throughout the country, which contained tables showing the present worth of life interests in personal property, with directions for computing the tax upon the same. These tables were based on "Actuaries'" or "Combined Experience Tables," and were used in arriving at the amounts paid in this case.

On June 30, 1899, letters testamentary were issued to appellants as executors, and on April 1, 1901, the United States Commissioner of Internal Revenue, pursuant to the provisions of § 29 of the Spanish War Revenue Act, as-

sessed a tax of about $12,000 on the share of each daughter, which was paid on April 15, 1901.

On October 29, 1907, appellants presented to the Government their claim, which was rejected, for the refund of $21,640.55 of the taxes so paid, "or such greater amount thereof as the Commissioner might find to be refundable, under the Refunding Act of June 27, 1902, or other remedial statutes."

The judgment of the Court of Claims, dismissing the amended petition as to the claims for refund of the tax paid on the legacies of the two daughters, and on three small legacies which will follow the disposition of these, and need no further notice, is before us for review.

Of the two claims of error argued, the first is, that the Court of Claims erred in refusing to hold that it was illegal to use mortuary tables and to assume four per cent. as the value of money in computing the tax that was paid, and that, therefore, the whole amount of it should be refunded.

The objection is not to the particular table that was used but to the use of any such table at all—to the method. Such tables, indeed the precise table which was made the basis of the one used by the collector, had been resorted to for many years prior to 1899 by courts, legislatures and insurance companies for the purpose of determining the present value of future contingent interests in property, and we take judicial notice of the fact that at the time this tax was collected four per cent. was very generally assumed to be the fair value or earning power of money safely invested. Both the method and the rate adopted in this case have been assumed by this court, without discussion, as proper in computing the amount of taxes to be collected under this War Revenue Act in *Knowlton* v. *Moore,* 178 U. S. 41, 44; *United States* v. *Fidelity Trust Co.,* 222 U. S. 158; *Rand* v. *United States,* 249 U. S. 503, 506, and in *Henry* v. *United States,* 251 U. S. 393. It is much too late to successfully assail a method so generally ap-

plied, and as to this claim of error the judgment of the Court of Claims is affirmed.

The facts following are essential to the disposition of the remaining question. The appellant executors appointed a trust company trustee for the two daughters of decedent and prior to July 1, 1902, they paid to it, in trust for each of them the sum of $426,086.66. After making these payments the executors had in their custody in cash and securities in excess of $1,797,000, from which, prior to March 16, 1906, they made further payments, amounting approximately to $500,000 to the trust fund for each of the daughters, thereby making each of them exceed $926,000. The assessment of each was $665,000 in April, 1901.

The contention is that the excess of the assessment above the amount which had been actually paid to the trustee prior to July 1, 1902, had not become vested prior to that date, within the meaning of the Act of June 27, 1902 (32 Stat. 406, § 3), and that it should therefore be refunded.

The law of New York in force when the estate was in process of administration, provided (New York Code of Civil Procedure, 1899, § 2721) that "after the expiration of one year (from the time of granting letters testamentary) the executors . . . must discharge the specific legacies bequeathed by the will and pay general legacies, if there be assets," and § 2722 gave to legatees the right to petition in an appropriate court to compel payment of their legacies after the expiration of such year.

Letters testamentary were granted to the appellants on June 30, 1899, and we have seen that assets abundantly sufficient to have increased the trust fund legacies of the daughters much beyond the amount at which they were assessed for taxation were in the custody of the executors prior to July 1, 1902, and therefore under this law of New York it was their duty to have made such payments prior to that date unless cause was shown for not so doing.

The state law also authorized (§ 2718) the executors to publish a notice once in each week for six months, requiring all creditors to present their claims against the estate, and provided that in suits brought on any claim not presented within six months from the first publication of such notice, the executors should not be chargeable for any assets which they may have paid out in satisfaction of legacies.

The appellants first published the notice to creditors on April 25, 1900, and therefore they might safely have made payment on the daughters' legacies after the 1st of November, 1900, one year and eight months prior to July 1, 1902, unless cause to the contrary was shown.

The only excuse given in the record for not complying with this state law is that in March, 1902, a stockholders' suit was commenced against the partnership of Moore & Schley, of which the deceased was a member, in which an accounting was sought for a large amount of promotion profits in connection with the organization of the American Malt Company. As to this the Court of Claims finds that the evidence does not show the pleadings, issues or the character of the suit, or the amount or merit of the claim, or the result of the litigation. Obviously, such a showing of such a suit cannot be considered to have been a genuine obstacle to settlement of the estate, and the other claims against it were negligible in comparison with the available assets.

It is thus apparent that for many months prior to July 1, 1902, there were abundant assets with which to make payments upon these two legacies, in an amount larger than was necessary to make them equal to, and greater than, that for which they were assessed for taxation; that for many months before that date it was the legal duty of the executors to make such payment; and that for a like time the legatees had a statutory right to institute suit to compel payment.

It is obvious that legacies which it was thus the legal

duty of the executors to pay before July 1, 1902, and for compelling payment of which a statutory remedy was given to the legatees before that date, were vested in possession and enjoyment, within the meaning of the Act of June 27, 1902, as it was interpreted in *United States* v. *Fidelity Trust Co.*, 222 U. S. 158; *McCoach* v. *Pratt*, 236 U. S. 562, 567; and in *Henry* v. *United States*, 251 U. S. 393. The case would be one for an increased assessment, rather than for a refund, if the War Revenue Act had not been repealed.

*Affirmed.*

MR. JUSTICE MCREYNOLDS did not participate in the discussion or decision of this case.