E. H. HALLETT, MARTIN A. BROWN, EUGENE M. DOW, AND NELL T. MOULTON, EXECUTORS OF THE ESTATE OF HERBERT B. MOULTON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60044. Promulgated December 5, 1933.

*George W. Pike, Esq.*, for the petitioners.
*Prew Savoy, Esq.*, for the respondent.

### OPINION.

SMITH: This proceeding involves a deficiency in estate tax of the estate of Herbert B. Moulton in the amount of $9,303.06. The only question for our determination is what amount of the residue of the decedent's estate is deductible from the gross estate as a bequest to charity.

The decedent died a resident of Lisbon, Grafton County, New Hampshire, December 25, 1928, leaving a last will and testament by which he disposed of his entire estate, valued by the respondent at $961,422.55. After making numerous specific bequests to individuals and to charity the decedent bequeathed the residue of his estate to trustees as follows:

16. All the rest, residue and remainder of my estate, of whatever kind and wherever situated, I give, devise, and bequeath to Martin A. Brown of Wilmington, Vermont, Ernest H. Hallett of Lisbon, New Hampshire, Eugene M. Dow of Lisbon, New Hampshire, and Edward K. Woodworth of Concord, New Hampshire, and their successors in trust, IN TRUST NEVERTHELESS and subject to the charges imposed by the foregoing provisions, for the following purposes:

A. To build and equip (exclusive of books) on some suitable lot in the town of Lisbon, at a cost of not less than thirty-five thousand dollars ($35,000), a public library to be known as Herbert B. Moulton Memorial Library, and upon the completion of said library to transfer the same by suitable instrument of transfer to the town of Lisbon, to be managed by a board of five trustees to be elected by said town in the following manner:

At the first annual meeting of the voters of said town at which legal action may be taken in the premises there shall be elected one trustee to serve for the term of three years, two trustees to serve for the term of two years, and two trustees to serve for the term of one year, and thereafterwards there shall be elected annually two trustees or one trustee, as the occasion may require. to serve for the term of three years. Vacancies arising otherwise than by expira-

tion of the term of office shall be filled for the unexpired portion of the term by the remaining members of the board. Such trustees may be men or women. If, however, a public library shall have been provided in said town during my life I direct that this bequest shall be void. In the event that I shall have begun but not completed such library my trustees shall complete the same.

*B.* To set aside the sum of twenty-five thousand dollars ($25,000) to be known as the Lyman Public School Fund, the income to be paid over annually for the support of schools in the town of Lyman, New Hampshire; but this provision shall not have the effect of relieving said town or any school district therein from raising and appropriating for the support of schools the amount required by law; it being the purpose of this provision to provide funds in addition to the amount which would be otherwise available.

*C.* To hold and manage the residue of my estate and to expend the income thereof remaining after the payment of all charges thereon created by this will and all other legitimate charges against my said estate, in their discretion, in such sums, at such times, and in such manner as may seem to them advisable, for philanthropic, educational or other charitable purposes, except as herein next provided, for the benefit of the town of Lisbon and its inhabitants.

My trustees shall make payments for the relief and support of any brother or sister of my wife or myself or their children by blood but not by adoption, or grandchildren by blood but not by adoption, who, through misfortune, may be in need of such relief and support.

I especially desire that the public schools in Lisbon shall be thoroughly efficient. Because the lapse of time brings changes in methods and conditions impossible to foresee, because it is not possible accurately to forecast the amount of income which my trustees will have at their disposal, and because needs more pressing than those of the public schools may arise, I do not attempt to specify what portion of the income of my estate shall be devoted to the public schools or any other particular object except as herein specified. I direct, however, that unless some unexpected and unusual conditions seem to warrant, no sums shall be devoted to the support and maintenance of the public schools for the purpose of relieving, or if the effect would be to relieve, the town or any school district therein from raising and appropriating such sums as are now raised and appropriated for the support of schools, or amounts proportionate to the sums now so raised and appropriated based upon valuation.

While my trustees are expressly directed to devote the income of my estate to philanthropic, educational and other charitable purposes for the benefit of the town of Lisbon and its inhabitants, they are, nevertheless, authorized to permit the annual income or any portion thereof to accumulate for a reasonable time for the erection of buildings, the establishment of parks or playgrounds, or to assist any such building or establishment, provided always that the objects shall be within the limits of a valid charitable trust. In the administration of the trust hereby created it is my purpose that my trustees and their successors shall exercise a wide discretion, and while it is my fundamental purpose to benefit the town of Lisbon and its inhabitants my trustees shall not be required to expend the whole of the income in said town provided that income expended elsewhere shall, in their judgment, be calculated to benefit the town or its inhabitants,—for example, and for example only, assistance may be rendered deserving young men and women of the town in pursuing their education elsewhere.

By clause 14 of the will the decedent bequeathed an aggregate of $2,000 to three churches in Lisbon.

In the estate tax return filed by the executors a deduction was taken for charitable bequests in the amount of $485,664.44 including the $2,000 bequeathed to the churches provided for in clause 14, the $25,000 gift to the public schools of Lisbon provided for in clause 16 *B*, and $457,664.44, representing the value of the gift of the residue of the estate, to the town of Lisbon and its inhabitants.

Upon audit of the estate tax return the respondent tentatively valued the residue of the estate for charitable purposes at $27,000, which amount he increased by $28,963.63 in his final determination. In making his final determination the respondent computed the amount deductible as a bequest to the town of Lisbon by taking the present value of the residue of the estate postponed until the end of the year of the death of the survivor of 31 persons aged, respectively, 6, 9, 11, 12, 14, 14, 15, 15, 16, 16, 19, 19, 19, 22, 27, 28, 34, 37, 40, 41, 42, 42, 50, 50, 52, 53, 55, 57, 66, 70 and 70, entitled to the benefits of clause 16 *C* of the will. In his brief the respondent states:

> The principle is a very simple one. The present value of $1.00, payable thirty years hence, is by no means $1.00. The present value thereof is the sum which with interest in thirty years will equal $1.00. Consequently, the value of a remainder interest for charitable purposes, payable thirty years hence, which is deductible from the gross estate, is not the value of the property today. The present value is the sum which with interest will equal the amount of the remainder in thirty years. If there is an intervening life estate, the length of that life must be determined by the mortality tables, and the present value of the remainder at the end of that life is the amount deductible from the gross estate as a gift for charitable purposes. That is the principle involved herein and applied by the Commissioner.

The principle anounced may be sound enough when applied to suitable facts, but in our opinion it leads to error here because of the respondent's assumption that each of the 31 persons who were entitled upon certain contingencies to receive benefits from the residue of the estate took a life estate in such residue.

Clause 16 of the will, when read in full, does not show any such purpose on the part of the testator. In subdivision *C* of clause 16 the trustees are directed to expend in their discretion all of the income of the residue of the estate remaining after the payment of all charges " for the benefit of the town of Lisbon and its inhabitants ", with the exception that payments should be made " for the relief and support " of any of a certain class or classes of relatives " who, through misfortune, may be in need of such relief and support ". Under this provision of the will the relatives did not take life estates in the residue of the decedent's estate. They took no vested interests of any description. Their interests were contingent upon their becoming in need of relief and support through misfortune. It is not reasonable to assume, as apparently the respondent

did, that misfortune was to befall all of the 31 relatives and that their combined needs for relief and support would absorb all or a substantial part of the income of the residuary estate, leaving nothing for the town of Lisbon and its inhabitants. If this had been the expectation of the testator he probably would have left the residue of the estate to his relatives for life with the remainder over to charity. There is no indication that such a construction was ever given to the will. We do not think that the will could have been lawfully construed in this manner. While admittedly some portion of the income of the estate might be expended for the benefit of the relatives mentioned, we do not believe that this consideration should be permitted to destroy the public character of the immediate gift to charity as avowed by the testator.

The only case cited by the respondent in his brief is *Henry R. Ickelheimer et al., Executors*, 14 B.T.A. 1317, which he claims to have followed literally in determining the deficiency herein. In that case the will of the decedent provided that the income from certain property and specific amounts of money should be paid to the widow of the decedent for life and that at her death such property and specific amounts of money should be paid over to charitable corporations. The respondent determined the amount deductible as a bequest to charity by valuing the remainder interest by reference to mortality tables at the time of decedent's death. In our opinion we said:

* * * The corporations did not receive the absolute ownership of the property in question, but were entitled to the corpus only after the expiration of the life estate of the widow. In such a case it is proper to value the remainder by reducing the amount to be received by an amount representing the delayed receipt of the bequest by the charities. See *Dugan* v. *Miles*, 292 Fed. 131; *United States* v. *Farr's Executor*, 196 Fed. 996; and *Simpson* v. *United States*, 252 U.S. 547.

Whether the remainder going to the charities is to be valued by reducing the present value to future value, which we regard as preferable to the method used by the respondent, it is certain that the deduction for bequests to charities must be less than the amount of the money at the date of the decedent's death. * * *

The obvious distinction between that case and the instant case is that there the widow took a vested life estate in the property passing to charities, while here, as we have pointed out above, there is no vested intervening estate. There was nothing of value to deduct from the residue of the estate in computing the value of charitable bequests, unless a value was to be ascribed to the contingent benefits to which each of the 31 relatives might become entitled, based on the probability of such beneficiary, through misfortune, becoming in need of support. This, however, was not done by the respondent and probably could not be done with any reasonable accuracy.

In *Humes* v. *United States*, 276 U.S. 487, the Supreme Court had before it almost the direct converse of the question here presented; that is, a deduction was sought of an amount representing the estimated value of contingent bequests to charity. The Court denied the deduction, holding that Congress did not intend to authorize a deduction for a contingency which could not be accurately determined. See also *St. Louis Union Trust Co.* v. *Burnet*, 59 Fed. (2d) 922, as to the nondeductibility of contingent charitable bequests.

*Ithaca Trust Co.* v. *United States*, 279 U.S. 151, is more directly in point. There, the testator bequeathed his residuary estate to his widow for life, authorizing the withdrawal of the principal of any sum necessary to maintain her " in as much comfort as she now enjoys ", with the remainder to charities. The court held that the provision for the maintenance of the widow did not render the gift to charity so uncertain as to prevent its deduction in computing the net taxable estate for estate tax purposes. We think that that might be said with even more certainty when the contingency involves only the income and not the principal of the trust property, as in the instant case.

Charitable bequests are favorites of the law, *St. Louis Union Trust Co.* v. *Burnet*, *supra*, and are expressly encouraged by the statute, *Edwards* v. *Slocum*, 264 U.S. 61.

We are of the opinion that the value of the residue of the decedent's estate at the time of the decedent's death, without any diminution on account of the contingent interests of the relatives referred to in the will, is deductible as a charitable bequest in computing the net taxable estate.

*Judgment will be entered under Rule 50.*