ESTATE OF ARCHIBALD M. CHISHOLM, ARCHIBALD M. CHISHOLM, JR., ET AL., EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85255. Promulgated January 21, 1938.

*D. S. Holmes, Esq., Robert L. Mayall, Esq.,* and *Frank W. Wilson, C. P. A.,* for the petitioners.

*E. C. Algire, Esq.,* and *R. K. Srygley, Esq.,* for the respondent.

OPINION.

STERNHAGEN : The petition assigns as error in the Commissioner's determination:

(b) Excessive valuation included in gross estate of 14,558 shares of the common capital stock of Shattuck-Denn Mining Company to the extent of $16,377.75.

The notice of deficiency contains no mention of Shattuck-Denn stock or its value and the estate tax return is not in evidence. It is, therefore, not possible from the record to say whether the value used by the Commissioner of 2⅛ per share is a readjustment of that stated by the petitioners in their return or an adoption by the Commissioner of the petitioners' return figure voluntarily used.

It is alleged and admitted that in the determination of the gross estate the Commissioner used a value of $30,935.75 for the 14,558 shares of Shattuck-Denn stock, or 2⅛ a share. The petitioners assail this as too high, but it can not be said from the evidence that the contention is adequately supported. The proof consists of the testimony of a stock broker whose conjectural opinion was elicited to the effect that if all the petitioners' shares had been offered for sale the market would, in his opinion, have thereby been depressed, and that he doubted whether a price in excess of 1½ could have been obtained. Through this witness exhibits were introduced showing the actual prices in transactions which had taken place in Shattuck-Denn shares on the New York Curb Exchange for a period of approximately four months beginning before and ending after the date of death. From this record of actual market performance it can not be said that the value of 2⅛ is too high. All of the sales were at

prices as high or higher than this figure except during one week in October, when an aggregate of 800 shares were sold at 2. Whether this was in one block does not appear. The total number of shares shown by the statement was more than 16,000 and the larger number of these were dealt in at prices above 2⅛. There is no evidence as to the financial condition of the corporation, its operations, assets, or earnings, its history or prospects.

The petitioner relies upon *Safe Deposit & Trust Co. of Baltimore, Executor*, 35 B. T. A. 259 (on review, C. C. A., 4th Cir.), and treats that decision as if it laid down as a rule the doctrine that the value of a large block of shares must be regarded as lower than the unit market prices of small lots. That decision, however, lays down no such rule, but expressly holds that whether a large block is to be valued at the same unit value as a small lot actually sold on the market is not a question to be dogmatically answered, but one which must be considered in each case upon evidence specifically applicable to the problem in hand. "If the value of a given number of shares is influenced by the size of the block, this is a matter of evidence and not of doctrinaire assumption."

The evidence in this proceeding fully supports the figure said to have been used by the Commissioner in his determination, namely, $30,935.75, and the fair market value so used has been found as a fact. This figure shall be used in a recomputation.

■ The petitioners claim as additional deductions, $8,595.04 alleged to have been incurred after October 22, 1935, as additional expenses of administration, Revenue Act of 1926, sec. 303 (a) (1). The amounts are described in the findings. That they are proper administration expenses seems apparent. The respondent, opposing the allowances, argues that because the estate had been in large part already distributed, only a comparatively small amount being withheld in reserve to take care of the ultimately determined tax liability, the rent of the office and the services of accountant and secretary were not necessary. But the estate was still unsettled, and it was not arbitrary or unreasonable for the executors to maintain an office and a secretary and employ an accountant. Cf. *First National Bank of Birmingham, Guardian*, 31 B. T. A. 847; *J. H. Anderson*, 30 B. T. A. 1275.

The amount stated in the findings is properly deductible in the final computation. *Arthur M. Lamport et al., Executors*, 28 B. T. A. 862; *William Rhinelander Stewart, Jr., et al., Executors*, 31 B. T. A. 201.

■ Although the notice of deficiency does not clearly set forth the item here in question, it is said that the Commissioner erroneously

included in the gross estate the face amount, reduced by loans and increased by dividends, of the insurance policies, despite the fact that under each policy the decedent had during his lifetime exercised the election to have the proceeds paid in installments and not in a lump sum. The petitioners claim that by virtue of section 302 (g) of the Revenue Act of 1926, in effect at the time of death, the amount to be included in the gross estate in respect of these insurance policies is the commuted value on a 4 percent rate at the date of death. The only controversy argued by the parties is the question of law, whether the gross estate shall include the face amount of the policies or the commuted value of the periodic payments provided for.

The controlling statute is as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \* \*

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

The language of this provision is the same as that of section 402 (f) of the Revenue Act of 1918 and of the Revenue Act of 1921, and section 302 (g) of the Revenue Act of 1924. It also goes forward into the Revenue Acts of 1928, 1932, and 1934. Although the general scheme of these estate tax statutes is to tax the transfer from the decedent and is, therefore, generally speaking, measured by the value transferred upon the occasion of death, a clear and express exception is made in respect of insurance. As to this, the statute provides that the gross estate shall include, with the value of property owned by the decedent at the time of his death and transferred, the amount, over $40,000, "receivable" by beneficiaries as insurance. The question at issue here, therefore, is what, as a matter of law, is to be regarded under this statute as the value at the time of death of the amounts receivable by the beneficiaries under the several policies set forth in the findings.

At the time of his death, the decedent had effectually elected to leave to the beneficiaries only the right to receive future periodical payments during their several lives. No right was given to them to do otherwise. They were expressly prevented from commuting the installment payments. Thus, it is beyond argument that to each beneficiary the right which he received to future installments had a value substantially less than the face amount would have had if presently receivable. Whether this would have been so if the beneficiary at the time of death had a right to elect as between a present

lump sum payment and a series of periodical installments is not of concern in this proceeding, because the beneficiary had no such election. Each beneficiary had but a right to periodic payments in the future.

The valuation of such a right or expectancy is a commonplace problem, *Simpson* v. *United States*, 252 U. S. 547. There is no dispute as to the determination through the use of mortality tables of the period of payments to be adopted as to each beneficiary, and in article 20 of Regulations 70, in effect at the time of the decedent's death, the factor of discount and the resulting commuted value is correctly set forth. There is no reason, therefore, why a correct computation can not be made in the conventional manner of the value at the date of death of the future payments to be received by each beneficiary.

Regulations 70 were in effect at the time of the decedent's death, and article 28 is in accord, as have been its predecessors, with this opinion. The respondent relies upon Regulations 80, in which the article is substantially modified. It would, however, be error to apply the rule of the later regulation to the determination of the estate of this decedent, who died before its promulgation, and it would be no more than *obiter* to consider in this opinion whether the later article is correct in prescribing the use of the face amount of the policies in cases where the insured at the time of death had omitted to exercise an election to have the insurance paid in a lump sum.

The respondent cites *Estate of A. Murat Willis*, 28 B. T. A. 152. That opinion, however, does not reach the present question. It dealt with an insurance fund directed by the decedent to be withheld from the beneficiary, interest to be paid, however, during the period of withholding. This was held to be not an annuity and to require no commutation to arrive at the value receivable at the time of death. In the present case, however, the face amount of the insurance was itself to be paid in periodic installments, and thus involved a substantially different right received by the beneficiary.

4. Other issues presented by the petition have been either abandoned or made the subject of a mutual settlement by the parties, and they need not, therefore, be set forth or considered in this opinion.

*Judgment will be entered under Rule 50.*