## PALFREY v. UNITED STATES.
### No. 7351.

District Court, D. Massachusetts.
Dec. 23, 1940.

John G. Palfrey, Roger F. Hooper, and Warner, Stackpole & Bradlee, all of Boston, Mass., for plaintiff.

C. Keefe Hurley, Asst. U. S. Atty., and Edmund L. Brandon, U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Lyle M. Turner, Sp. Assts. to Atty. Gen., for defendant.

SWEENEY, District Judge.

This is an action to recover a portion of a federal estate tax which is alleged to have been illegally assessed and collected from the estate of the petitioner's decedent through the application of an erroneous method of valuation. The petitioner does not question that the values of the securities composing the trust funds were correctly determined by the Commissioner, or that these values should be taken into consideration in valuing the three interests of the decedent in question. The petitioner does contend that the decedent's three interests should be valued as units as between a willing seller and a willing buyer in order to determine the values to be assessed. The method of valuation adopted by the Commissioner will appear hereinafter. All conditions precedent to the right to maintain the action have been satisfied.

Findings of Fact.

The facts, which are derived mainly from the pleadings, are that Benjamin P. Cheney, the elder, died in 1895. He will hereinafter be referred to as the father. His will was admitted to probate after a compromise agreement had been confirmed by the Supreme Judicial Court of Massachusetts on appeal from the decision of the Probate Court. In the will, as thus probated, a trust was set up under the residuary clause. Two of the five beneficiaries of that trust were the decedent Mary Cheney Davis, a daughter, and Benjamin P. Cheney, the younger, hereinafter referred to as the son. The petitioner in this action is the sole surviving executor of the will of Mary Cheney Davis, the daughter.

Under the provisions of the will, as modified, the son was the owner of a one-fifth life interest and a one-fifth equitable remainder in the residuary trust fund. Upon partial distribution of the trust estate to the extent of one share, his one-fifth interest became a one-fourth interest in the trust fund remaining.

The son was adjudged a bankrupt on January 14, 1918. On January 20, 1922, Elizabeth S. Cheney, his mother, who will hereinafter be referred to as such, through another trust that had been set up for that purpose, commenced purchasing claims against the bankrupt estate and all of the bankruptcy assets, including the life interest and equitable remainder in the trust fund referred to above. All of this property was not acquired during the life of the mother, but acquisitions were made by the trust after her death. She died in 1922, and her will was admitted to probate in New Hampshire on December 27, 1922.

By her will the mother gave one-fifth of the residue of her estate to the decedent. The other four-fifths went to four other children.

By the time that the decedent died on July 17, 1934, the executors of the estate of her mother had become the holders of the entire interest of the son in his father's residuary trust, both as to principal and income. The decedent had a one-fifth interest in her mother's residuary es-

tate which included the item here in question, subject to a certain trust set up by her mother in the third codicil to her will on December 7, 1921. That trust, in substance, provided that the income from the funds therein, which consisted principally of the assets purchased from the trustees in bankruptcy, should be paid during the lifetime of the son and his wife Julia in the proportion of two-thirds to the son and one-third to his wife Julia. It further provided that if Julia predeceased Elizabeth S. Cheney or was not the wife of the son at the time of the death of the mother, or, in any event, on the death of Julia the entire income of the trust fund was to go to the son during his lifetime. It further provided that if the son predeceased the mother that the two-thirds of the trust fund from which he would have drawn the income during his lifetime was to revert to the estate of the mother, and become part of the residue thereof. It further provided that on the death of the son, the funds constituting the trust held for his benefit were to revert to the estate of the mother, and become part of its residue. Both of the beneficiaries of this trust are living at the present time.

The first item in question here is the value of the interest of the decedent (being a one-fifth interest) in so much of the residue of the estate of her mother as consisted of a one-fourth remainder in the residuary trust of the father, subject to the trust provided in the third codicil to the will of the mother. In reaching his valuation, the Commissioner first determined the value of the residuary trust under the will and compromise agreement of the father by totaling the valuation of each investment as of the date of the decedent's death. The total interest of the mother's estate was valued at one-fourth thereof, and the value of the decedent's interest in this remainder was determined by taking one-fifth of the above amount less the value of the life interests.

The second item in question is the valuation of the future interest of the daughter in her own right in the residuary trust estate of her father, namely, her right to a distribution of one-fourth of that trust estate. The Commissioner determined the value of the decedent's interest in this trust as the total value on the date of her death (July 17, 1934) of the particular securities which were on November 15, 1934, first allocated to the decedent's executors and

set apart and delivered to them. In determining the value as of the date of her death, the Commissioner made proper allowances for deduction for trustees' compensation and expenses.

The third item in question is the valuation of the interest of the decedent in the special trust under the compromise agreement under the will of the father. This last item emanated from the Fourth clause of article Fourth of the father's compromise agreement which provided, in substance, that the income of $400,000 should be paid to the decedent during her life, and upon her death the principal and any accrued income would pass to her executors to be disposed of in accordance with directions in her will. The executors received distribution on November 15, 1934. The Commissioner determined the value of the decedent's interest in this trust as the total value on the date of her death (July 17, 1934) of the particular securities which were on November 15, 1934, first allocated to the executors and set apart and delivered to them. In determining the value as of the date of her death, the Commissioner made proper allowances for deduction for trustees' compensation and expenses.

### Discussion.

### Item One.

Section 301(a) of the Revenue Act of 1926, C. 27, 44 Stat. 9, 26 U.S.C.A. Int. Rev.Acts, page 225, provides for a tax "upon the transfer of the net estate of every decedent".

The net estate with which we are concerned is the one-fifth interest of the decedent in so much of the residue of the estate of her deceased mother as consisted of a one-fourth remainder in the trust set up by the father, subject to a trust set up in the will of the mother. The Commissioner deducted from the total value of the securities in the trust, the value of the two life estates as determined by reference to the Actuaries' or Combined Experience Table of Mortality. The petitioner contends for a unit valuation as between a willing seller and a willing buyer, and alleges that the valuation arrived at by the Commissioner was greatly in excess of a unit market value judged by what a willing buyer would pay to a willing seller for that remainder, neither being under compulsion to buy or to sell. He urges that the Commissioner's method of valuing the remainder was excessive be-

cause of two factors: First, because of certain infirmities—namely, (a) that the trustees administering the life estate were not bonded, (b) that the securities composing the trust were subject to constant change, (c) that the market values of the securities themselves were constantly changing, (d) that the securities might ultimately be distributed in cash, and (e) that the decedent's representative had no control over the management of the trust fund. Second, that the beneficiaries of this life estate were of such a type, that is, people independently wealthy and without business cares or worries, that it was reasonably certain that they would live longer than the term of years allotted to them by the Actuaries' or Combined Experience Table of Mortality.

■■■ The use of the Actuaries' or Combined Experience Table of Mortality in order to determine the valuation of future interests has long been utilized and has received the approval of the courts. Simpson v. United States, 252 U.S. 547, 550, 40 S.Ct. 367, 64 L.Ed. 709, and Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647. No other sound method has been advanced by the petitioner. Obviously, the net value of a trust, such as is here involved, must be the actual value of the securities composing the trust as of the decedent's death, less any restrictions which may go to depreciate that value. No better method of valuing the life estate has been suggested than the one employed by the Commissioner. I assume that his valuation of the life estate takes into consideration all of the other minor factors which might go to depreciate the value of the trust property. These would include such items as average life expectancy which includes all types of persons, trustees' compensation during the life tenancy, and other factors of depreciation or accretion. The tax is laid upon the net estate transferred. The method of determining the value of the net estate was a proper one. In view of the fact that the petitioner agrees that the decision of the Commissioner is mathematically correct, the valuation as determined by him must stand.

As against the system employed by the Commissioner, the only other method suggested by the petitioner is valuation by reliance on expert testimony. Obviously, such reliance would be hazardous in the case of trust property, complicated or not by dependence on other trusts, for there are probably no actual sales of property, so similar to, or, like the property in question as to acquaint anyone with an exact or scientific knowledge of its value. At best, we would have but the opinion of one or more men which would be pretty much based on conjecture, unless they employed the Actuaries' or Combined Experience Table of Mortality or some other similar tables to arrive at a scientific answer to the question. Nothing that has been suggested in this case would cause me to believe that such a valuation would be practical or any fairer than the one utilized by the Commissioner. The petitioner has not met the burden of showing that the method of valuation used by the Commissioner was improper or unsound.

### Item Two.

■■■ The thing valued under this Item was an undivided one-fourth remainder interest in the trust set up under the will of the father. The Commissioner determined this value on the basis of the total market value of the securities composing the trust as of the date of the decedent's death, less deductions for trustees' compensation and expenses. As of that date this fund was being administered by trustees, and it could not be foretold on that date just exactly when distribution would be made, and whether it would be made in cash or securities. Distribution was actually made on November 15, 1934, and for the first time the allocation of the trust property was made to the executors of the decedent. The valuation set by the Commissioner was not the total valuation on the date of death. It was rather the valuation that was made after proper deduction for trustees' compensation and expenses had been made. In other words, the valuation was on the net value of the estate as of the decedent's death, such net valuation having been determined subsequent to the termination of the trust from which the distribution was made.

The petitioner argues that the unit value of the trust fund as of the date of the decedent's death was depreciated somewhere between ten and fifteen per cent. by reason of the uncertainty of the duration of the trust, the uncertainty of the changes in the trust property, the uncertainty of the future value of the trust, because of the powers and immunities of the trustees themselves, and the ultimate charges for administration expenses. All

of these so-called infirmities were not due to the administration of the decedent's estate, but rather to the uncertainty of the administration of the trust itself before it came into her estate. But, at the time of the decedent's death, while she did not have title to the property in her father's trust fund, there was, nevertheless, vested in her the right to her distributive share of so much of that property as would remain after proper administration, and the right to have it delivered upon entry of the decree of distribution. This is the right that was taxed as of the day of her death. See Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457. The value of this right as determined by the Commissioner made just allowance for the expenses of administration, and this was the only depreciation to which the estate was entitled.

Testimony to the effect that on the date of her death it would have been impossible to sell her interest in the father's trust fund without a depreciation of ten or fifteen per cent. is not convincing. Such rights as she had in that fund were not without powers of enforcement. The system of valuation employed by the Commissioner was a fair and reasonable one.

### Item Three.

This Item is made up of the principal of $400,000 and any accrued interest thereon as of the date of the decedent's death, which under the will of her father was to pass to her executors to be disposed of in accordance with directions in her will. The Commissioner determined the valuation of this fund solely on the total market value of the securities in the fund. The petitioner urges that this fund was subject to the same infirmities disclosed under Item Two, in that the time of division was uncertain, distribution was controlled by the trustees, and they could not release the securities until settlement of their accounts. In the meantime, the securities were in the sole control of the trustees, and their powers and immunities were substantially the same as in Item Two. The petitioner says that the executor's interest was uncertain in the sense that many of the incidents of ownership were lacking, and that they did not have custody or control of the securities, and could not sell or deliver them, except by possible contract for future delivery. In other words, admitting that the infirmities were temporary, the petitioner alleges that, nevertheless, these infirmities had a depreciating effect on the total valuation of the securities making up the trust fund as of the date of the decedent's death. This might be true in the sense that a price that a purchaser would pay for such an estate would be less than the total valuation of the securities making up the trust estate, but I find it difficult to believe that the estate would be depreciated beyond the deduction allowed by the Commissioner for administration expenses. As in Item Two, the right that the estate of the decedent had in this fund was an enforceable right. The mere passage of time necessary to wind up the trust estate for delivery to her estate is no more than the usual delay incident to the settlement of the estate of any decedent. Rights may vest on the date of death where actual title and possession is delayed for a brief period of time. Such infirmities, if they can be called such, would hardly justify me in arriving at the conclusion that the Commissioner, following a long established custom and practice, had acted in an unfair or arbitrary manner so as to produce an improper result. Actual distribution of the securities under this fund was made to the executors on November 15, 1934, after proper deductions for trustees' compensation and expenses had first been made. All that I have said relating to Item Two is equally applicable here. The method of valuation employed by the Commissioner was a correct one.

### Conclusions of Law.

I find and rule that the method of valuation used by the Commissioner in determining the value of each Item was proper and legal.

The petitioner's requests for findings of fact are denied.

Judgment is to be entered for the defendant with costs.