63 Cal.2d 131 (1965)
403 P.2d 405
45 Cal. Rptr. 149
Estate of FRIEDA HOGEMANN, Deceased.
UNITED CALIFORNIA BANK, as Administrator With the Will Annexed, etc., et al., Petitioners and Respondents,
v.
ROBERT F. KENNEDY, as Attorney General of the United States, Claimant and Appellant.
Docket No. L.A. 27773.
Supreme Court of California. In Bank.
July 2, 1965.
*132 John W. Douglas, Assistant Attorney General (United States), Francis C. Whelan and Manuel Real, United States Attorneys, Morton Hollander, Sherman L. Cohn, Pauline B. Heller and Robert V. Zener for Claimant and Appellant.
Powers, Himrod & Pepys and Eric C. Pepys for Petitioners and Respondents.
MOSK, J.
The Attorney General of the United States, as successor to the Alien Property Custodian, appeals from an order divesting the United States of its interest in the estate of an enemy alien pursuant to Public Law 87-846 (50 U.S.C. App. § 41).
The decedent, then a resident and national of Germany, died testate in 1942, bequeathing her residuary estate in specified proportions to certain near relatives. The property located in California consisted of a modest amount of cash and securities. In 1950 the United States Attorney General, acting pursuant to the Trading With the Enemy Act (50 U.S.C. App. §§ 1 et seq.) and various executive orders issued thereunder, executed Vesting Order No. 16217, vesting in him for the benefit of the United States "all right, title, interest and claim of any kind or character whatsoever" of six legatees under decedent's will who were residents and nationals of Germany, amounting to nineteen twenty-fourths of the residuary estate.
*133 The first administration having been declared incompetent, a California bank was substituted in 1958 as administrator with the will annexed. In September 1960 the bank presented its account and petition for distribution. On October 27, 1960, the court decreed distribution of that portion of the estate not affected by the vesting order; but as the German legatees requested additional time to investigate the "continued effectiveness" of the vesting order,[1] the court withheld distribution of the remaining nineteen twenty-fourths of the estate here in issue.
In October 1962 Congress enacted Public Law 87-846, which provides in relevant part that "all rights and interests of individuals in estates ... vested under this [Trading With the Enemy] Act ... which have not become payable or deliverable to or have not vested in possession in the Attorney General prior to December 31, 1961, are divested; ..." (50 U.S.C. App. § 41.)[2]
In September 1963 the administrator presented its final account and the court entered the order from which this appeal *134 is taken, divesting the United States of its interest in the estate purportedly pursuant to Public Law 87-846.
The main issue we need resolve is whether that portion of the estate subjected to the vesting order of 1950 became "payable or deliverable to or ... vested in possession" in the Attorney General prior to the cutoff date of December 31, 1961. Respondents (the German legatees) take the position that under California law (Prob. Code, § 300) the property in an estate remains "subject to the possession of the executor or administrator," and therefore subject to the control of the superior court, until the decree of distribution; that no such decree has been entered as to the nineteen twenty-fourths of the estate here in issue; and hence that such portion of the estate never became payable or deliverable to or vested in possession in the Attorney General.
[1] At the time of the first hearing, however, the estate was not in such an unsettled condition as respondents assert. In its order of October 27, 1960, the court found (1) that all notices required by law for settlement of the estate had been given, (2) that the proposed account of the administrator was correct, (3) that the time for filing claims against the estate had duly expired, (4) that all taxes and debts of the estate, and administration expenses other than commissions, had been paid, and (5) that "except for a determination of the rights, if any, of the legatees named in the Will of said decedent whose interests have been affected by said vesting order issued by the Attorney General of the United States, said estate is otherwise in a condition to be closed and by reason thereof there may be distributed at this time ... that portion of the estate distributable to persons whose interests are not affected by said vesting order...." (Italics added.) The clear implication of these findings is that although actual distribution of the share vested in the United States was temporarily withheld, the entire estate was then "distributable" as far as California probate law was concerned.
Respondents emphasize that a principal purpose of a decree of distribution is the determination by the court of the persons to whom the estate passes and their respective shares (Prob. Code, § 1021), and argue that because no such decree was entered as to the nineteen twenty-fourths of the estate here in issue we cannot know to whom and in what amounts the property was thus distributable. The argument, however, is refuted by the realities of the case. The decedent's will was not ambiguous in this regard, and the administrator's first account *135 listed by name "the persons to whom said Estate is to be distributed ... and the proportions thereof to which each is entitled." The court adopted that listing as to the legatees whose shares were ordered distributed, and there is no reason to suspect that the list was any less acceptable as to those whose shares were affected by the vesting order. The record is devoid, in fact, of any dispute over either the identity or the shares of the German legatees.
[2] Of course, in the absence of a decree distributing the share vested in the United States, that share was not reduced to physical possession by the Attorney General. But in the light of the legislative history of Public Law 87-846 that fact appears irrelevant. In the form first introduced in Congress the bill provided for divestment of interests which had not been "reduced to possession," i.e., physically collected, by the Attorney General. Subsequently, the Department of Justice, speaking through Deputy Attorney General (now Justice) Byron White, requested that the language of the bill be amended to save interests still in the process of collection; the interests to be divested would be those not collectible until the occurrence of some future event, such as income interests (which cannot be collected until the periodic payment date) or remainder interests (which cannot be collected until death or passage of time terminates the intervening estate). The language proposed by the Department of Justice to effect this change was adopted verbatim by Congress in the final form of Public Law 87-846. Yet under respondents' view this deliberate alteration of wording would serve only the trivial purpose, in the present context, of guarding against the possibility that the cutoff date might occur for some estates during the brief period between entry of the decree of distribution and the writing of a check by the administrator in accordance with that decree. Nothing in the language or history of the statute compels such a narrow limitation of its scope.
Although this is a case of first impression as to Public Law 87-846, persuasive analogy is found in decisions of the United States Supreme Court construing an earlier federal statute which repealed a special succession tax imposed during the Spanish-American War. That statute established a cutoff date of July 1, 1902, and declared that interests in estates which had not become "absolutely vested in possession and enjoyment" by such date were no longer subject to the tax. In United States v. Jones (1915) 236 U.S. 106 [35 S.Ct. 261, 59 L.Ed. 488], where the decedent died only three days before *136 the cutoff date, a tax was collected on the theory that the interests of the heirs had vested at the moment of the decedent's death. The United States Supreme Court held, to the contrary, that the heirs' interests had not become vested in possession and enjoyment as of the cutoff date because "no administrator had been appointed, the debts and expenses had not been ascertained, what, if anything, would remain after their payment was uncertain, and the time had not come when the [heirs] were entitled to a distribution." (236 U.S. at p. 114.) None of those enumerated conditions remained unfulfilled at the cutoff date in the instant case, which is therefore more analogous to Simpson v. United States (1920) 252 U.S. 547 [40 S.Ct. 367, 64 L.Ed. 709]. In Simpson the Supreme Court held that even though a decree of distribution had not been entered before the cutoff date, the interests under the will had become "absolutely vested in possession and enjoyment" within the meaning of the federal statute when under state law (1) the time for presentation of creditors' claims had expired and (2) the legatees could institute proceedings for distribution of the estate.
[3] The findings in the present case disclose that the stage reached in Simpson had in effect been reached in the administration of this estate: the allowable time for filing creditors' claims had long since expired (Prob. Code, §§ 700, 707, 716), and the Attorney General therefore had the power to institute proceedings for distribution of the share of the estate included in the vesting order (Prob. Code, §§ 1000-1003). Respondents urge that such a "preliminary distribution" is discretionary with the court, citing Estate of Painter (1897) 115 Cal. 635, 640 [47 P. 700]. It is true that in the first instance it is for the court below to find from the evidence whether the estate is "but little indebted," whether the inheritance taxes have been paid, and whether the share prayed for may be distributed without loss to creditors or injury to the estate or to any person interested therein. (Prob. Code, § 1001.) But in the case at bar it will not be disputed that each of these conditions was met; and in such event the statute further directs that upon application therefor the court "shall make" an order of preliminary distribution. Such an order, moreover, would be responsive to "the established policy of this state, implemented by sections 1000 and 1001 of the Probate Code" which "favors the earliest possible distribution of estates" (Estate of Toler (1957) 49 Cal.2d 460, 467, 469 [319 P.2d 337]; accord, Estate of Buchman (1955) 132 Cal. App.2d 81, 100-101 [281 P.2d 608, 53 A.L.R.2d 451], and cases cited).
*137 The analogy to Simpson v. United States, supra, goes yet one step further: the executors in Simpson also had a stated excuse for delaying distribution beyond the cutoff date: i.e., that a shareholder's suit had been brought against a partnership of which the decedent was a member. The Supreme Court noted that the evidence did not indicate the pleadings, issues or character of that suit, the amount or merit of the claim, or the result of the litigation, and concluded that "such a showing of such a suit cannot be considered to have been a genuine obstacle to settlement of the estate" (252 U.S. at p. 552). [4] Similarly in the case before us there is only a vague reference in the record to "certain questions raised with respect to" the vesting order of 1950, coupled with a failure of the German heirs to present any judicial challenge to the validity of that order and the lack of jurisdiction in the probate court to rule on any such challenge had it been presented. It follows, as in Simpson, that no "genuine obstacle to settlement of the estate" before the cutoff date was shown in the sense required by the federal statute. It is the purpose and intent of that statute which must be given effect in this proceeding.
The order is reversed.
Traynor, C.J., Peters, J., Tobriner, J., and Peek, J., concurred.
WHITE, J.[*]
I dissent.
As recognized in the majority opinion the determinate issue to be resolved by us is whether prior to the cutoff date of December 31, 1961, that portion of the estate subject to the vesting order of 1950 became "payable or deliverable to or ... vested in possession" in the Attorney General of the United States.
There can be no doubt that in 1950 when, pursuant to the Trading With the Enemy Act (50 U.S.C. App. § 1 et seq), the Attorney General of the United States, as successor to the Alien Property Custodian, executed Vesting Order No. 16217. there were thereby vested in him for the benefit of the United States the interests of the six legatees with which we are here concerned. But the word "vest" has more than one meaning and may mean "vest in right or interest" or "vest in possession."
*138 It has long been settled law in California that money or property of an estate is not payable nor deliverable to, nor does it vest in possession in, the heirs or legatees until an order of preliminary or final distribution has been made; that before the heir can enter upon the enjoyment and possession of his vested right he must await the completion of administration and the determination of his heirship by the decree of distribution. It is at that time the court must determine the person to whom distribution is to be made and the portions or parts to which each is entitled. (Trippet v. State, 149 Cal. 521, 529 [86 P. 1084, 8 L.R.A.N.S. 1210]; Estate of Buckhantz, 159 Cal. App.2d 635 [324 P.2d 317].)
This court should be reluctant to whittle away, relax or set aside this salutary, long-standing and settled law.
The majority opinion relies on certain findings made by the probate court in its order of October 27, 1960, as indicating that the estate was then for all intents and purposes in a condition to be closed. However, in its finding (5), relied upon by the majority, the court specifically found that the estate was in a condition to be closed, "except for a determination of the rights, if any, of the legatees named in the Will of said decedent whose interests have been affected by said vesting order issued by the Attorney General of the United States...." (Italics added.) Since the probate court has not made any decree of distribution determining whether any or all of the German beneficiaries are entitled to take under the will or the extent to which they are entitled to take, it necessarily follows that until such decree of distribution is made it cannot be said that the legacy or property is payable to, distributable to or vested in the possession of anyone. When such an order of distribution ultimately is made it will admittedly be after December 31, 1961, the last date on which the Attorney General of the United States would have been entitled to payment or delivery or on which the interest now engaging our attention would have vested in his possession.
As was said in Estate of Easter, 24 Cal.2d 191, 194 [148 P.2d 601]: "It is settled, however, as conceded by the appellants. that the effect of a will is controlled by the decree of distribution when final. The decree is said to be `conclusive as an ascertainment and adjudication ... of the rights of all parties claiming any legal or equitable interest under the will. [Citations.] The decree supersedes the will and prevails "over any provisions therein which may be thought inconsistent with the decree." [Citations.]'"
*139 It is also noteworthy that it was on October 27, 1960, treating the accounting as a current rather than a final account, that the court made its aforesaid order of distribution of five twenty-fourths of the estate not involved in the vesting order but withheld distribution of the nineteen twenty-fourths of the estate here involved. It must be assumed, since the Attorney General of the United States filed the vesting order on December 6, 1950, that he availed himself of the provisions of section 1202 of our Probate Code (request for special notice) and thereafter received the notices provided for in Probate Code section 1200. Assuming that the Attorney General received such notices, he was aware of the aforesaid order of the court of October 27, 1960. Yet he neither at the time said order was made nor during the nearly three years that ensued, when on September 4, 1963, the court made and entered the order here appealed from, made any objection to or petitioned the probate court to modify or change said order nor did the Attorney General proceed under Probate Code sections 1000-1003. He complained only after the court's order made on September 4, 1963, nearly two years after the divestment statute (Public Law 87-846) became effective on December 31, 1961. Indeed, the majority opinion concedes that during the three-year period just referred to, the Attorney General "had the power to institute proceedings for distribution of the share of the estate included in the vesting order (Prob. Code, §§ 1000-1003)." (Ante, p. 136.) Under the law, the possession and control of the administrator as against the heirs (in this case the Attorney General of the United States who claimed under them) during the administration is not lost because the purposes of administration have been accomplished and the estate is ready for distribution or because closing of the administration of the estate is unduly delayed (Berry v. Eyraud, 134 Cal. 82, 83 [66 P. 74]) and, since the Attorney General did not avail himself of his power to institute proceedings for distribution of the share of the estate included in the vesting order (Prob. Code, §§ 1000-1003) it follows that until entry of the decree of distribution the property here involved was neither "payable," "deliverable to," nor "vested in possession" of any of the six heirs nor of the Attorney General who claimed under them, prior to December 31, 1961, the effective date of the divesting statute.
The majority opinion refers to the legislative history of Public Law 87-846 which in its initial form as introduced in the Congress would have divested assets due but not yet *140 collected by the Attorney General. Thereafter, the Department of Justice speaking through the Attorney General requested that the language of the bill be amended to make the fact of receipt, or right to receive, the determinate date. Although it did not discuss the issue now before us, as I view the suggestion contained in the letter of the Attorney General it would seem to be persuasive in favor of the order here under review when recognition is given to the well established distinction between "vesting in interest" and "vesting in possession."
The majority opinion cites and relies upon two cases decided by the Supreme Court of the United States entitled United States v. Jones (1915) 236 U.S. 106 [35 S.Ct. 261, 59 L.Ed. 488], and Simpson v. United States (1920) 252 U.S. 547 [40 S.Ct. 367, 64 L.Ed. 109]. To me, these cases are not determinate of the problem with which we are confronted because we are not here concerned with a case wherein the Attorney General sought to avail himself of the provisions of Probate Code sections 1000-1003 by instituting proceedings, as the majority opinion concedes he had the right to do, for distribution of the shares of the estate included in the vesting order during the existence of such order, but with a situation wherein the Attorney General seeks to set aside an order divesting the United States of its interest in the estate made, as heretofore pointed out, a year after the Congress enacted Public Law 87-846 and approximately two years after the cutoff date fixed by the just-mentioned statute.
I would affirm the order.
McComb, J., concurred.
NOTES
[1] As the Attorney General points out, if the German legatees had wished to challenge their status as enemy aliens or the validity of the vesting order, their sole remedy was to seek return of the property by an action brought in the federal district court. (50 U.S.C.App. § 9(a); Kennedy v. Union & New Haven Trust Co. (2d Cir.1961) 296 F.2d 655, 656.) The constitutionality of the Trading With the Enemy Act, of course, is beyond question. (Silesian American Corp. v. Clark (1947) 332 U.S. 469, 475-477 [68 S.Ct. 179, 92 L.Ed. 81].)
[2] The entire statute provides:

"(a) Subject to the provisions of subsection (b) hereof, all rights and interests of individuals in estates, trusts, insurance policies, annuities, remainders, pensions, workmen's compensation and veterans' benefits vested under this Act after December 17, 1941, which have not become payable or deliverable to or have not vested in possession in the Attorney General prior to December 31, 1961, are divested: Provided, That the provisions of this section shall not affect the right of the Attorney General to retain all such property rights and interests and to collect all income which is payable to or vested in possession in him prior to December 31, 1961.
"(b) Nothing contained in this section shall divest or require the divestment of any portion of any such interest the beneficial owner of which is a natural person who has been convicted personally and by name by a court of competent jurisdiction of murder, ill treatment, or deportation for slave labor of prisoners of war, political opponents, hostages, or civilian population in occupied territories, or of murder or ill treatment of military or naval persons, or of plunder or wanton destruction without justified military necessity.
"(c) At the earliest practicable time after the effective date of this Act, the Attorney General shall transmit to the lawful owner or custodian of any interest divested by this section written notice of such divestment."
[*] Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.