5. Samuel Di Falco, S.
In this accounting by the executors, the only contested issue is whether interests heretofore vested under the Trading With the Enemy Act (U. S. Code, tit. 50, Appendix, §§ 1 to 39) have been divested by Public Law 87-846 of October 22, 1962 (tit. II, § 205 thereof) (76 U. S. Stat. 1115) (U. S. Code, tit. 50, Appendix, § 41). By that law, “ all rights and interests of individuals in estates, trusts * * * annuities, remainders * * * vested under this Act after December 17,1941, which have not become payable or deliverable to or have not vested in possession in the Attorney General prior to December 31, 1961, are divested”. The question here is whether the interests had vested in possession in the Attorney General prior to the specified date.
The decedent, a German domiciliary, died January 29, 1946, survived by his wife and two children. His will relating only to his American property was admitted to probate in this court in 1947. In 1948 all right, title and interest of the widow, the son and the daughter ‘6 in and to the estate of and the trust created under the will of Francis Moran Brambeer, deceased ’ ’ were vested in the Attorney General of the United States. It is said that the property of the decedent in the United 'States was very substantial at the time that the will was made, but dispositions of it had been made during his lifetime. At any rate, the will speaks in terms of a very substantial fund which did not exist at the time of death. The entire estate is set up in trust for the life use of the widow, with a direction to the trustees to pay $25,000 from principal to each child or children attaining the age of 21 years. Thus far the Attorney General has received slightly more than $4,000 as the share of each child (they having reached 21 in 1947 and 1950) and nothing has been set apart for the trust. The present accounting shows receipt by the executor of the additional sum of $18,252.08 during 1966 and *265 1967 as distributions from the residuary trust under the will of Frederick W. Brambeer, a brother of our testator.
Frederick Brambeer was an English barrister, and the will disposing of his American property was construed by this court (19 Misc 2d 922). A trust was to continue during the lives of his brother and two sisters and for a period of 21 years after the death of the last of them to die. The remainder is to go to the children of Francis or their issue. However, no disposition of income was made during the 21-year period, and this court ruled that, under the law of Frederick’s domicile, the income during that period passed as intestate property to the personal representatives of the brother and sisters. The funds received by this estate represent income collected by the trust under Frederick’s will from November 29,1954 — the death of the last surviving sister — to November 13, 1967.
It is undisputed that, of the total received by the accounting executor, the sum of $8,636.56 represents income up to December 31, 1961 — the cutoff date in the divesting statute — and it is payable to the Attorney General under his vesting order, less administration expenses allocable against it. The balance of the fund represents income collected by the trustee under Frederick’s will after January 1, 1962. The question is whether the rights and interests of the persons in these funds had “ become payable or deliverable to or [had] vested in possession in the Attorney General prior to December 31,1961.”
What must be kept clearly in mind is that we do not have here any order vesting interests in Frederick’s estate. (It is stated that other vesting orders in estates other than the pending one do affect interests of persons herein, but it is conceded that they are not involved in this proceeding.) Our testator’s estate becomes entitled to undisposed income from his brother’s trust only as an intestate distributee of that brother. What was income in Frederick’s estate becomes principal in our estate. It is because it is principal that the two children, Francis, Jr. and Ada, became entitled to receive it after they had satisfied the condition of the will. Ada became entitled to it one year after her father’s death and even before probate of the American will; Francis satisfied the condition four year's after his father’s death. The difficulty was that the executor never had sufficient funds to pay either of them in full.
Both parties cite as support for their argument the very same paragraph from the decision in Northern Trust Co. v. Biddle (65 Ill. App. 2d 253, 259-260, cert. den. 385 U. S. 828): “ The phrase ‘ vested in possession ’ is well understood as meaning ‘ a right of present enjoyment ’ * * * Contrasted with these *266 terms is the phrase ‘ vested in interest, ’ which means a present fixed right of future enjoyment. Thus any given interest may first-he vested in interest (as a vested remainder prior to termination of the preceding estate), then vested in possession (as a vested, remainder upon termination of the preceding estate), and finally reduced to possession (as when distribution is made by the trustee). It is clear that the legislative intent was to divest the Attorney General where he was merely vested in interest, but not where he was vested in possession.”
The meaning ascribed in' the term ‘ ‘ vested in possession ’ ’ in the cited case is in accord with the general trend of authority. In Matter of Cochrane (117 Misc. 18, 30), which dealt with the New York transfer tax, Judge Slater referring to the rights under the instrument in question as conferring an estate ‘ ‘ vested in possession ” as distinguished from one “ vested in interest ”, said: “An estate is vested in possession when there exists a right of present enjoyment.” In Butler v. Sherwood (114 Misc. 483, 486, affd. 196 App. Div. 603, affd. 233 N. Y. 655) the court said: “An estate is vested in possession when there exists a right of present enjoyment; and is vested in interest when there is a present fixed right of future enjoyment.” (See, also, People v. Estate of Strom, 363 Ill. 241; 44 Words and Phrases, Perm, ed., pp. 277-278.)
The legislative history of the divesting statute casts some light upon the general objectives of this section, but little upon it's application to the particular problem before us. As originally introduced in the Congress, the bill would divest any interests which were not reduced to possession, but only in estates of decedents who were citizens or nationals of the United States at the time of death and only in trusts created by individuals who were then citizens or nationals of the United States. (Letter of Department of Justice, 108 Cong. Rec. p. 19228, Sept. 12, 1962; Domke, The War Claims Act of 1962, 57 Am. J. Int. L., 354, 369; Matter of Hogemann, 63 Cal. 2d 131.) The Department of Justice, in its letter to the Senate Committee on the Judiciary, expressed approval of the general objectives of the bill, but suggested that the aims of the legislation could be more equitably and efficiently accomplished by the use of a different approach, and in line with that suggestion it submitted the text which was adopted and is the center of the controversy in this case. The letter continues: “Whereas 'S. 291 would return interests due the Attorney General, but not yet collected, the suggested legislation would provide a cutoff date (the time of the enactment of the measure) after which income or remainder interests in estates, trusts, insurance policies, annuities, pen *267 sions, workmen’s compensation and veterans’ benefits accruing would not be payable or deliverable to or vested in possession in the Attorney General. The amendment provides, however, for the retention of all interests that will have become due or have been paid or delivered to the Attorney General prior to the enactment of the legislation.
“ The suggested language would give substantial relief to the categories of persons sought to be benefited by S. 291 and similar pending bills, and would also relieve the Office of Alien Property of a prolonged and costly administrative burden. The proposed amendment would broaden the types of interests divested to include all income and future interests [italics added]; it would, in addition, benefit all beneficiaries of these interests, regardless of whether they are citizens of the United States or of whether the estate or trust were created by a citizen or national of the United States. It is our view that the time has come for the establishment of a cutoff date for the collection of income from estates, trusts, and similar properties. The reasons for this conclusion are, first, that there must be a point at which vesting must stop, as it already has with respect to property acquired after December 31, 1946; and second, that, with the passing years, the expense of collecting income payments and preserving remainder interests will become disproportionately large in relation to the value of the property to be taken in.” (108 Cong. Rec., supra.)
It is thus apparent, that, if the subject of the vesting order were the interest of our testator under the will of his brother or were the remainder interests under that will, those interests would be divested The Government takes the position, however, that what was here vested were interests as legatees under this will and that the legatees, having satisfied all conditions, were absolutely entitled to their legacies prior to the cutoff date. If there were moneys available to the executor at that time, or even moneys which the executor then had the right to collect, the Government’s position would be impregnable. The difficulty is that on the cutoff date even the executor had no right to possess or to collect the moneys now in controversy,
We may find some hint of legislative intent in an earlier statute that used the same term, namely, the Spanish War Revenue Act. (30 U. S. Stat. 448, 464, ch. 448; June 13, 1898.) Authority to collect an inheritance tax was discontinued and a right to recover a refund of the tax was given. Both the termination of the tax and the right to the refund depended upon whether the interest had “ absolutely vested in possession or enjoyment ” prior to the cutoff date. (United States v. Fidelity *268 Trust Co., 222 U. S. 158, 159.) The argument was there made that a legacy vested absolutely upon the death of a testator and the probate of his will, but that -argument was rejected by the court. It was held that a legacy vested in possession whenever, under the law of the State where the estate was being administered, the legatee would have the right to demand payment or bring a proceeding to compel payment. (Simpson v. United States, 252 U. S. 547; McCoach v. Pratt, 236 U. S. 562; Woerishoffer v. United States, 269 U. S. 102; Kahn v. United States, 257 U. S. 244; Henry v. United States, 251 U. S. 393; United States v. Jones, 236 U. S. 106.) In the last-cited case the court said (p. 112): “ So, in a practical sense [the interests of legatees] are contingent and uncertain until, in due course of administration, it is ascertained that a surplus remains after the debts and expenses are paid. Until that is done, it properly cannot be said that legatees or distributees are certainly entitled to receive or enjoy any part of the property. The only right which can be said to vest in them at the time of the death is a right to demand and receive at some time in the future whatever may remain after paying the debts and expenses.”
In the present case the executor of this estate had no right to demand or receive income collected in Frederick’s trust after December 31, 1961 until such time as the trustees of that trust actually received the income. The legatees under the will of our testator had no right to demand or sue for the remainder of their legacies until the executor became entitled to receive the funds. Hence the court holds that, with respect to income collected after December 31,1961, the interests were riot ‘ ‘ vested in possession in the Attorney General prior to December 31, 1961 ” and were divested by the law of 1962 (U. S. Code, tit. 50, Appendix, § 41).
The accounting executor is also correct in the procedure set forth in paragraph 4 of its prayer for relief.